UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOLLINGSWORTH LOGISTICS GROUP, LLC,
a Michigan limited liability company,

       Plaintiff/Counter-Defendant,

v.

EQUIPMENT LEASING SERVICES, LLC,
an Arizona limited liability company,
SCOTT POWELL, and KATHLEEN POWELL,

       Defendants/Counter-Plaintiffs/
       Third-Party Plaintiffs,

v.

STEPHEN BARR, R. JAMES LAPOINTE, and MICHAEL T. MCNAMARA,

       Third-Party Defendants.

_____/

Case No. 2:10-cv-11011

Honorable Patrick J. Duggan

**OPINION AND ORDER GRANTING PLAINTIFF AND THIRD-PARTY DEFENDANTS' MOTION TO DISMISS, DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, AND GRANTING PLAINTIFF LEAVE TO AMEND ITS COMPLAINT**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on October 29, 2010.

PRESENT: THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

Plaintiff Hollingsworth Logistics Group, LLC filed this action against Equipment Leasing Services, LLC ("ELS"), Scott Powell, and Kathleen Powell to recover payments Plaintiff made on behalf of Hollingsworth Financial Services, LLC ("HFS").[1] Defendants filed counterclaims against Plaintiff and third-party claims against HFS officers Stephen Barr, R. James LaPointe, and Michael McNamara. Presently before the Court is Plaintiff and Third-Party Defendants' Motion to Dismiss the counterclaims and third-party claims. Also before the Court is Defendants' Motion for Judgment on the Pleadings. The matter has been fully briefed, and the Court heard oral arguments on September 23, 2010.

For the reasons stated below, the Court denies Defendants' Motion for Judgment on

---

[1] To minimize confusion of the two related Hollingsworth entities, this Opinion and Order will refer to Plaintiff Hollingsworth Logistics Group, LLC as "Plaintiff" and Hollingsworth Financial Services, LLC (which is not a party to this action) as "HFS."

2

the Pleadings. The Court grants Plaintiff and Third-Party Defendants' Motion to Dismiss, and grants Plaintiff leave to amend its Complaint pursuant to this Opinion and Order.

**I. Factual and Procedural Background**

Plaintiff is a Michigan limited liability company engaged primarily in supply chain management for Tier One and Tier Two automotive suppliers. Defendant ELS is an Arizona limited liability company in the business of leasing equipment. Defendants Scott and Kathleen Powell (collectively, "the Powells") are members and managers of ELS.

In 2004, Plaintiff and ELS formed a Michigan limited liability company, HFS, to engage in equipment leasing. ELS brought industry expertise to the new venture, while Plaintiff provided access to new clients and funding. Plaintiff and ELS also entered into an Operating Agreement providing Plaintiff with 51% ownership of HFS; ELS held the remaining 49%. Compl. Ex. 1, Operating Agreement § 3.1.

Plaintiff, ELS, and/or HFS obtained loans to fund equipment purchases, signing promissory notes in return.[2] HFS collected lease payments from its customers and made loan payments to its lenders. When customers began defaulting on their lease payments, HFS was unable to pay its lenders. Compl. ¶ 14. Plaintiff claims that it paid $740,958.08 toward HFS's loans and $854,790.60 toward HFS's overhead expenses, such as payroll, accounting fees, legal fees, travel costs, and sales taxes. *Id.* ¶¶ 16-17. Thus, Plaintiff

---

[2] Plaintiff has attached copies of fifteen promissory notes to its Complaint. *See* Compl., Ex. 1. These notes were signed by a variety of parties - one by ELS alone, three by HFS alone, and others by a combination of ELS, HFS, and Plaintiff. The promissory notes originate from lenders in three different states: Comerica Bank (Michigan), Tennessee Commerce Bank (Tennessee), and Los Padres Bank (Arizona).

alleges that it made payments totaling $1,595,748.68 on behalf of HFS. *Id.* ¶ 37.

Plaintiff filed this action in Wayne County Circuit Court to recover ELS's "pro-rata share" or "pro-rata contribution" of 49% of these payments. *Id.* ¶¶ 15, 17, 30, 40. Defendants removed the suit to this Court pursuant to 28 U.S.C. § 1441 and asserted counterclaims for breach of the Operating Agreement, bad faith, oppression, breach of fiduciary duty, and unjust enrichment. Defendants asserted third-party claims for breach of fiduciary duty and unjust enrichment against three HFS officers selected by Plaintiff: Stephen Barr, R. James LaPointe, and Michael McNamara.

Plaintiff and the Third-Party Defendants moved to dismiss the counterclaims and third-party claims pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Operating Agreement bars these claims. Defendants likewise argue that the Operating Agreement bars Plaintiff's claims, and have moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

## II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court recently provided in *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct.

4

1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 129 S. Ct. at 1949. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. In conducting this analysis, the Court may consider the pleadings, exhibits attached thereto, and documents referred to in the complaint that are central to the plaintiff's claims. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is subject to the same standards of review as a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

## III. Sources of the Parties' Claims

The parties dispute whether their claims arise from the Operating Agreement, and the Court must address this threshold question to determine whether they have stated plausible claims for relief. The parties similarly contend that Section 7.5 of the Operating Agreement precludes the claims against them:

> 7.5 **Settlement of Controversies, Cooling Off Period.** Any controversy, claim or dispute *arising out of or relating to this Operating Agreement*, including deadlock as to any matters requiring the consent of the Members, or the interpretation, breach or enforcement of this Operating Agreement, shall not be subject to judicial action or resolution, and no Member shall elect to withdraw from the Company or do any other event triggering dissolution of the Company until sixty days shall have passed from the date such controversy, claim, dispute or deadlock arose. For the purposes of this paragraph, a controversy, claim, dispute or deadlock shall be deemed to have arisen, and the sixty day period hereunder shall begin to toll, upon the written notice of any Member to all other Members. The written notice shall state the matter, decision or transaction forming the substance of the controversy, claim, dispute or deadlock. If such controversy, claim, dispute or deadlock is not resolved within such sixty day cooling off period, the Members shall proceed with reasonable promptness to liquidate the Company.

Compl. Ex. 1, Operating Agreement § 7.5 (emphasis added). Plaintiff urges a narrow interpretation of the language "arising out of or relating to this Operating Agreement," limiting this clause to disputes over the Operating Agreement's terms. Defendants favor an expansive reading, arguing that "without the Operating Agreement there would be no relationship and no basis for even discussing whether ELS is obligated to pay [Plaintiff] any money." Defs.' Mot. J. Pleadings 10.

Neither of these interpretations comports with the provision's plain meaning. Courts have interpreted the term "arising out of" to mean "originating from" or "having its origin

in." *Kmart Corp. v. Fireman's Fund Ins. Co.*, 88 F. Supp. 2d 767, 773 (E.D. Mich. 2000). This language is broad, and includes disputes beyond the specific terms of the Operating Agreement. Yet this clause has limits, and applies only to disputes arising from *the Operating Agreement*, not every dispute arising from *the parties' relationship*.

Plaintiff is the master of its Complaint, and argues that its claims arise from the loan transactions rather than from the Operating Agreement. Pl.'s Resp. Defs.' Mot. J. Pleadings 5. Section 7.5 does not preclude claims arising from loan transactions if the transactions do not arise from the Operating Agreement. The Operating Agreement does not require either Plaintiff or ELS to borrow money on HFS's behalf; it only requires that the Members approve borrowing by HFS. Compl. Ex. 1, Operating Agreement § 4.4(i). The Operating Agreement's terms govern HFS; thus, where HFS is not a borrower, the loan does not "originate from" or "relate to" the Operating Agreement. The alleged loan contracts arose from the parties' *relationship*, but not from the *Operating Agreement*. A plain reading of Section 7.5 does not bar claims relating to loans entered into by Plaintiff and ELS where HFS was not a party.

### IV. Plaintiff's Claims

Defendants moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), and the Court will address each of Plaintiff's claims in turn. Plaintiff asserts claims against ELS for breach of contract, contribution, unjust enrichment, and promissory estoppel. Plaintiff also asks the Court to "pierce the veil" and hold the Powells individually liable.

### *Breach of Contract*

Plaintiff's breach of contract claim specifically refers to the parties' obligations "under the Loan Documents." Compl. ¶¶ 25, 27-28. The promissory notes are governed by the laws of three different states - Michigan, Arizona, and Tennessee - but regardless of the state law applied, Plaintiff has failed to state a plausible breach of contract claim. Absent ambiguity, the rights of the parties to a contract rest on the contract as written, and courts cannot rewrite the agreement under the guise of interpretation. *Vigil v. Badger Mut. Ins. Co.*, 363 Mich. 380, 383, 109 N.W.2d 793, 795 (Mich. 1961); *see also Emp'rs. Mut. Cas. Co. v. DGG & Car, Inc.*, 183 P.3d 513, 518 (Ariz. 2008); *Petty v. Sloan*, 277 S.W.2d 355, 359 (Tenn. 1955). Plaintiff has failed to cite any provisions in the promissory notes imposing liability on ELS for amounts Plaintiff paid in excess of "its share."[3] Absent such a provision, the Court cannot conclude that ELS breached a contract with Plaintiff.

### *Contribution*

The law of the forum determines a plaintiff's entitlement to equitable remedies. *McColl v. Wardowski*, 280 Mich. 374, 377, 273 N.W. 736, 737 (Mich. 1937). The Court therefore applies Michigan law when acting in equity.

The Michigan Supreme Court recently addressed contribution, describing it as "an equitable remedy based on principles of natural justice." *Tkachik v. Mandeville*, No. 138460, 2010 Mich. LEXIS 1631, at *11 (Mich. Jul. 27, 2010). The court noted that it "has applied the doctrine of contribution between co-contractors." *Id.* (citing *Comstock v.*

---

[3] This, of course, does not necessarily allow ELS to escape all liability under the promissory notes. ELS may be liable to the *lenders* under these notes, but the notes do not specifically impose liability in favor of *Plaintiff*.

*Potter*, 191 Mich. 629, 637, 158 N.W. 102, 105 (Mich. 1916)). "When two or more persons are jointly liable for the payment of the same debt or obligation and one has paid the entire claim, he may have contribution from his co-debtors or obligees in cases where it would be equitable and just." *Comstock*, 191 Mich. at 638, 158 N.W. at 105.

Plaintiff has pleaded facts sufficient to establish a common debt, by asserting that ELS and Plaintiff are liable on the same promissory notes. Compl. ¶ 15. Plaintiff has presented evidence of its signature and ELS's signature (by agents) on several of the notes. *See* Compl., Ex. 1. On one of the notes, ELS is the only listed borrower and there is no indication that it signed in a representative capacity. Accepting Plaintiff's allegations as true, and drawing all reasonable inferences in its favor, the Court concludes that Plaintiff has asserted facts sufficient to find ELS and Plaintiff jointly liable on one or more of the promissory notes.

Plaintiff's Complaint also satisfies the second element of a contribution claim, as it alleges payment of the shared claim entirely by one party. Plaintiff alleges that it paid the amounts owed under the relevant promissory notes. Compl. ¶ 26. It further alleges that ELS refused to remit payment to Plaintiff for any portion of these payments. *Id.* ¶¶ 27-28. Accordingly, Plaintiff has stated a plausible contribution claim.

### *Unjust Enrichment*

Unjust enrichment is an equitable remedy. *Wuliger v. Mfrs. Life Ins. Co. (USA)*, 567 F.3d 787, 799 (6th Cir. 2009). The Court therefore applies Michigan law in determining whether Plaintiff has stated a plausible claim. The law will imply a contract to prevent unjust enrichment when one party inequitably receives and retains a benefit from another,

but only if there is no express contract between the same parties covering the same subject matter. *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 194-95, 729 N.W.2d 898, 903-04 (Mich. App. 2006). To the extent that Plaintiff made payments on debts for which ELS was liable, Plaintiff has stated a plausible unjust enrichment claim.

### *Promissory Estoppel*

Because promissory estoppel is equitable in nature, the Court applies Michigan law. *See APJ Assocs., Inc. v. N. Am. Philips Corp.*, 317 F.3d 610, 617 (6th Cir. 2003). In Michigan, a plaintiff asserting promissory estoppel must establish that "(1) there is a promise (2) that the promisor should have reasonably expected to induce action (3) which in fact produces reliance or forbearance (4) under circumstances such that the promise must be enforced if injustice is to be avoided." *Id.* Plaintiff asserts reliance on ELS's promise to remit payment. Compl. ¶¶ 47-49. The alleged facts are sufficient to find that Plaintiff actually relied on the promise, that its reliance should have been expected, and that the promise should be enforced. Defendants may contest these allegations, but they are at least plausible.

### *Plaintiff's New Allegations of Fraud*

In their brief, Plaintiff and the Third-Party Defendants describe "Additional Frauds Perpetrated by ELS." Pl.'s Resp. Defs.' Mot. J. Pleadings 5. They state that HFS, rather than Plaintiff, will pursue these allegations. *Id.* at 5-6. Accordingly, the Court does not construe this statement as a motion to amend the Complaint.

### *Plaintiff's Claims Against the Powells*

Plaintiff asserts claims against Scott and Kathleen Powell, the member/managers of

ELS. Plaintiff alleges that ELS cannot make its share of the loan payments due to undercapitalization. Compl. ¶¶ 32, 42, 55. Plaintiff claims that it entered into the Operating Agreement and the loan transactions based on misrepresentations made by the Powells that ELS was sufficiently capitalized. *Id.* ¶¶ 33, 43, 56. Plaintiff therefore concludes that ELS is a "mere agent or instrumentality" that the Powells used to avoid legal obligations. *Id.* ¶¶ 34, 44, 57. Asserting that ELS has been "used to commit a wrong," Plaintiff asks the Court to pierce the corporate veil and hold the Powells individually liable. *Id.* ¶¶ 31, 41, 54.

Generally, the law of the state of incorporation determines issues relating to the internal affairs of a corporation, as that protects the justified expectations of parties with interests in the corporation. *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621-22, 103 S. Ct. 2591, 2597 (1983). Because ELS is an Arizona limited liability company, the Court looks to Arizona law to determine whether Plaintiff has alleged facts sufficient to justify disregarding the limited liability entity. "[A] corporation will be treated as a separate entity unless sufficient reason appears to disregard the corporate form." *Standage v. Standage*, 711 P.2d 612, 614 (Ariz. Ct. App. 1985). "As a separate entity, the personal assets of an individual stockholder may not normally be reached to satisfy corporate debts." *Id.* at 615. But where the corporation "is shown to be the alter ego or business conduit of a person, and where observing the corporate form would work an injustice, a court may properly 'pierce the corporate veil.'" *Id.*

Arizona law requires Plaintiff to show that ELS is the alter ego of the Powells, but Plaintiff has failed to allege any facts supporting its claim. The Complaint only asserts

11

that "Defendant ELS is [the] mere agent or instrumentality of the Powells." Compl. ¶¶ 34, 44, 57. This conclusory assertion is insufficient under *Iqbal*.

The Court believes that Plaintiff should amend its Complaint to provide factual support for these claims. Federal Rule of Civil Procedure 15(a)(1)(B) provides that a party may amend its pleading once as a matter of course within twenty-one days after service of a motion under Rule 12(b), (e), or (f). Otherwise, a party may amend only with the opposing party's written consent or the court's leave, but "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts have discretion in granting leave to amend. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject for relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.* In the absence of any apparent or declared reason, such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment, leave to amend should be freely given. *Id.* Plaintiff may be entitled to the relief sought, if it can show that ELS was the alter ego of the Powells and that respecting the corporate entity would be unjust. Although Plaintiff has not sought leave to amend its Complaint, there is no indication of bad faith or undue delay. Granting leave to amend will not prejudice any of the parties at this stage of the proceedings. Therefore, by this Order, the Court grants Plaintiff leave to amend.

## V. Defendants' Counterclaims and Third-Party Claims

In response to Plaintiff's Complaint, Defendants filed counterclaims of breach of the Operating Agreement, bad faith, oppression, breach of fiduciary duty, and unjust

12

enrichment.  Defendants also raised third-party claims against HFS officers Stephen Barr, R. James LaPointe, and Michael McNamara.  Plaintiff and the Third-Party Defendants moved to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6), and the Court will now address this Motion.

Defendants' Counts One and Two allege that Plaintiff violated assorted provisions of the Operating Agreement.  Breach of the Operating Agreement is a claim arising directly from the Operating Agreement.  Accordingly, Section 7.5 of the Operating Agreement bars these claims.

Count Three alleges that Plaintiff violated Michigan Compiled Laws § 450.4404 by managing HFS in bad faith, while Count Four alleges that Plaintiff violated Michigan Compiled Laws § 450.4515 by oppressing HFS's other members.  Article Four of the Operating Agreement establishes the management of HFS.  A claim of bad faith in managing the business implicates Article Four, and Section 7.5 bars actions seeking enforcement of the Operating Agreement.  Likewise, the duty to refrain from oppressive conduct arises directly from the creation of a limited liability company.  *See* Mich. Comp. Laws § 450.4515.  Because the Operating Agreement was one of the key documents used in forming HFS, the duty arises from the Operating Agreement.  Accordingly, claims for breach of this duty are barred.

In Count Five, Defendants claim that Plaintiff and the Third-Party Defendants breached fiduciary duties owed "[d]ue to their positions in the Company."  Countercl. ¶ 74.  Sections 4.1 and 4.2 of the Operating Agreement establish these "positions," appointing Plaintiff as a manager and the Third-Party Defendants as officers.  This claim

13

therefore arises from the Operating Agreement, and is barred.

Count Six alleges that Plaintiff and the Third-Party Defendants have been unjustly enriched by Defendants' efforts on behalf of HFS. Plaintiff is only enriched by efforts on behalf of HFS because it is a member of HFS. Its rights to any benefits arise from the formation of HFS and are defined by the Operating Agreement. Similarly, the HFS officers' rights to benefits arise only from their appointment as officers. Because Section 4.2 of the Operating Agreement makes those appointments, Defendants' claim against the officers arises out of the Operating Agreement, and is barred.

Dismissal of these claims does not render their allegations inconsequential. After all, Plaintiff's claims of contribution and unjust enrichment sound solely in equity, and are subject to equitable defenses. The Court will deny equitable relief if doing so would be unjust in light of actions taken by Plaintiff and the Third-Party Defendants, but it may not make that determination at this stage of the proceedings.

## VI. Conclusion

For the reasons stated above,

**IT IS ORDERED** that Defendants' motion to dismiss Plaintiff's breach of contract claim is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss Plaintiff's remaining claims is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff and Third-Party Defendants' Motion to Dismiss is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff is **GRANTED** leave to amend its Complaint to provide factual support for its assertions against the Powells. If Plaintiff fails to submit an Amended Complaint stating a claim for relief against the Powells on or before November 12, 2010, the Court will dismiss Plaintiff's remaining Counts as to the Powells.

**IT IS FURTHER ORDERED** that Defendants' request for costs and attorneys' fees is **DENIED**.

<u>s/PATRICK J. DUGGAN</u>
UNITED STATES DISTRICT JUDGE

Copies to:
Joseph A. Ahern, Esq.
Erica L. Keller, Esq.
Nicholas Gorga, Esq.